**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| FINOVA CAPITAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Frederick J. Kapala |
| v. | ) | No. 3:08-cv-50060 |
| | ) | |
| JAMES BISHOP, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF FINOVA CAPITAL CORPORATION'S MEMORANDUM OF LAW IN**
**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, FINOVA Capital Corporation ("FINOVA"), by its attorneys, Reed Smith LLP,

hereby submits this Memorandum of Law in Response to Defendant James Bishop's Motion to

Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below,

this Court should deny the Defendant's Motion.

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). Accordingly, in order to survive a motion to dismiss, a plaintiff is only required to plead

enough to "nudge their claims across the line from conceivable to plausible." *Prudential Ins. Co.*

*of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

As a general matter, "[o]rders under 12(b)(6) are not appropriate responses to the

invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential

defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). As

such, it is exceedingly rare for a statute of limitations defense to warrant dismissal under Federal

Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *id.* (collecting cases); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) ("[T]he period of limitations is an affirmative defense [and thus] is rarely a good reason to dismiss under Rule 12(b)(6).").

## <u>INTRODUCTION</u>

This action arises from a tortious and unlawful conspiracy in which the Defendant – a licensed attorney – continues to participate.  The Defendant represented a third-party, Judith Petersen ("Petersen"), in FINOVA's breach of contract action against her.  (Compl. at ¶ 9.)  In that action, the Court granted summary judgment to FINOVA.  (*Id.* at ¶ 11.)  In order to evade enforcement of the judgment, Petersen fraudulently transferred all of her interest in real estate to a trust in which her husband, Michael Petersen, is the trustee and sole beneficiary.  (*Id.* at ¶ 12.)  To disguise the fraudulent nature of the transfers, the Defendant backdated documents purporting to authorize them, so that the transfers would appear to have been authorized before FINOVA filed the breach of contract action against Petersen.  (*Id.* at ¶¶ 18-22.)  During FINOVA's subsequent fraudulent transfer action, filed in 2004, the Defendant presented the forged documents to the court, and concealed his wrongful acts.  (*Id.* at ¶¶ 16-18.)  Recently, FINOVA learned of the Defendant's unlawful conduct and brought this action against him.

Now, the Defendant asserts two deficiencies with FINOVA's Complaint.  First, the Defendant argues that FINOVA's claims are barred by the Illinois statute of limitations applicable to legal malpractice claims, 735 ILCS 5/13-214.3.  Second, he argues that the Complaint fails to adequately plead fraud and fraudulent concealment.  For the reasons below, both assertions are without merit.

<u>**ARGUMENT**</u>

**I.     FINOVA HAS NOT ATTEMPTED TO PLEAD A FRAUD CLAIM, AND IT WAS NOT REQUIRED TO PLEAD FRAUDULENT CONCEALMENT**

For the sake of simplicity, FINOVA will begin by addressing the Defendant's arguments that it has unsuccessfully pled fraud and fraudulent concealment.  First, as is clear from the face of the Complaint, FINOVA has *not* attempted to assert a fraud claim.  Rule 9(b) is thus irrelevant to FINOVA's allegations.  Second, as to fraudulent concealment, the Defendant cites to state court pleading standards.  (*See* Def. Resp. at 5-6.)  Those standards are inapplicable in federal court, where a plaintiff "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).  Accordingly, FINOVA will not address these contentions further.

**II.     FINOVA'S CLAIMS ARE NOT TIME-BARRED**

**A.     The Defendant Requests this Court to Apply the Wrong Statute of Limitations.**

The primary deficiency in Defendant's argument that FINOVA's claims are time-barred is extremely straightforward:  he asks this Court to apply the wrong statute of limitations.  It is well settled that the statute which Defendant relies upon – 735 ILCS 5/13-214.3 – applies only to claims for attorney *malpractice* by the attorney/defendant's client.  The Defendant can cite no case to the contrary, because both Illinois courts and federal courts applying Illinois law have unanimously held the statute inapplicable outside of an attorney-client relationship.  *See Ganci v. Blauvelt*, 690 N.E.2d 649, 654 (4th Dist.. 1998) (holding Section 13-214.3 inapplicable where Plaintiff did not "allege[] a breach of [the attorney-defendant's] duty to him" and which "was not an action for legal malpractice."); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926 (S.D. Ill. 2006) (holding that the language of the statute "is unambiguous with respect to its exclusive application

to attorney malpractice claims") citing *Cotton v. Private Bank & Trust Co.*, No. 01 C 1099, 2004 WL 526739, at *3 (N.D. Ill. Mar. 12, 2004).

Indeed, courts have emphasized the sharp distinction "between a claim arising out of a professional [attorney-client] relationship and one arising out of a third-party, non-client relationship." *Cotton*, 2004 WL 526739, at *4 (citing *Ganci*, 690 N.E.2d at 653). Most notably, courts have declined to apply Section 13-214.3 where the complaint against the defendant-attorney "did not allege a failure in professional duty, but rather *an action similar to conspiracy* or inducement." *Id.* (citing *Ganci*, 690 N.E.2d at 653) (emphasis added). *See also Bova*, 446 F. Supp. 2d at 933 (Section 13-214.3(b) does not apply where the complaint seeks recovery for "'conduct on [the attorney's] part whereby he shared culpability for the injuries to plaintiffs.'" (*quoting Ganci*, 690 N.E.2d at 653).)

Here, the Defendant does not assert – and there can be no doubt that – there was no attorney-client relationship between the parties. Rather, the Defendant's tortious and unlawful acts towards FINOVA were committed in the course of his role as opposing counsel in the underlying litigation, and FINOVA's conspiracy claim seeks to hold Defendant accountable for the injuries he and his clients caused to FINOVA. Accordingly, Section 13-214.3 is simply inapposite.

**B.    FINOVA's Claims Are Not Barred by the Applicable Statute of Limitations, 735 ILCS 5/13-205.**

Contrary to Defendant's assertion, the applicable period of limitations is five years, as provided by 735 ILCS 5/13-205. *Marx v. Northwestern Mem'l Hosp.*, No. 04 C 5688, 2007 WL 1280643, at *5 (N.D. Ill. Apr. 30, 2007) (noting that, in Illinois, civil conspiracy is a common-law tort "governed by the five-year statute of limitations that applies to 'all civil actions not otherwise provided for.'") (quoting 735 ILCS 5/13-205). For a civil conspiracy claim, that

limitations period cannot even begin to run until the Defendant commits the "last overt act" which causes damage. *Maxwell v. Village of Sauget, Illinois*, No. 06-451-GPM, 2007 WL 420195, at *5 (S.D. Ill. Feb. 05, 2007) (citing *Austin v. House of Vision, Inc.*, 243 N.E.2d 297, 299 (1st Dist.1968)). Here, the last overt act which caused damage was – at the absolute earliest – the Defendant's *use* of the forged documents in order to effectuate the goals of the conspiracy. Indeed, it was not the simple forgery of the documents in 2001 and 2002 that caused FINOVA's injury but, rather, Defendant's presenting them in the fraudulent transfer action against Petersen, which was not filed until 2004. (Compl. at ¶ 16.) Thus, even granting the Defendant the absolute *earliest* accrual date possible, much time remains in the limitations period even as of the date of this Response's filing.

Moreover, even assuming *arguendo* that the statute had accrued much earlier than it actually did, the Defendant's fraudulent concealment of the conspiracy provides a *wholly independent* basis for inapplicability of the statute of limitations. Notwithstanding the fact that a conspiracy claim does not accrue until the defendant commits the "last overt act," 735 ILCS 5/13-215 nonetheless provides that:

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

Here, FINOVA could not possibly have discovered the Defendant's wrongful acts until he presented the forged documents in the course of FINOVA's fraudulent transfer action. Accordingly, the Complaint was filed well within the applicable period, notwithstanding the statute of limitations that ordinarily applies to conspiracy claims.[1]

---

[1] The Defendant's motion also fails as a matter of federal procedure. Because the running of the limitations period is an affirmative defense, "it is rarely a good reason to dismiss under Rule

Continued on following page

## CONCLUSION

In sum, the Defendant urges this Court to dismiss – at the pleadings stage – FINOVA's

Complaint pursuant to a statute of limitations which is clearly inapplicable to FINOVA's claims.

As set forth above, the Defendant's motion is faulty as both a matter of state law *and* a matter of

federal procedure.  Accordingly, FINOVA respectfully requests that this Court deny the

Defendant's motion to dismiss.

Respectfully submitted,

FINOVA CAPITAL CORPORATION

By: /s/ John W. Moynihan
              One of its attorneys

John W. Moynihan (ARDC  No. 6212061)
Gary S. Caplan (ARDC No. 6198263)
Joseph B. Prater (ARDC  No. 6290497)
Reed Smith LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL  60606
(312) 207-1000

---

Continued from previous page
12(b)(6)."  *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004); *see also, e.g.*, *Xechem,* 372 F.3d at 901 (7th Cir. 2004).  As noted above, a plaintiff "need not anticipate and attempt to plead around all potential defenses," and thus FINOVA was under no obligation to address fraudulent concealment in its Complaint.  *Xechem,* 372 F.3d at 901.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certify that I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS** to be served via U.S. Mail, postage prepaid, on July 07, 2008 upon the following persons:

        Stephen P. Carponelli
        230 W. Monroe St., Suite 250
        Chicago, IL 60606-4711

                By:  /s/ John W. Moynihan

Westlaw.

C Marx v. Northwestern Memorial Hosp.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Stacy MARX, Aaron Marx, and David Marx (a
minor), Plaintiffs,
v.
NORTHWESTERN MEMORIAL HOSPITAL, et
al., Defendants.
**No. 04 C 5688.**

April 30, 2007.

Felipe N. Gomez, Law Office of Felipe N. Gomez,
Chicago, IL, for Plaintiffs.
David L. Laporte, Lawrence S. Kowalczyk, Querrey
& Harrow, Ltd., Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JAMES F. HOLDERMAN, Chief Judge.
**\*1** In their First Amended Complaint (Dkt. No. 35)
and Supplemental Complaint to First Amended
Complaint Adding Defendants and Claims (Dkt. No.
146, "Supplemental Complaint"),[FN1] plaintiffs Stacy
Marx, Aaron Marx, and their minor son David
(collectively "Plaintiffs") allege numerous causes of
action against defendants Levy Security Corporation
("Levy") and Levy employees Randall Thomas
("Thomas"), Quantis Smith ("Smith"), and Bernard
T. Lapinard ("Lapinard"), among others.

> FN1. On May 16, 2006, the court granted
> the parties leave to amend all pleadings and
> add any additional parties on or before
> November 15, 2006. While the Federal
> Rules of Civil Procedure do not provide for
> a "Supplemental Complaint," the court
> adopts Plaintiffs' chosen language for ease
> of discussion. The proper label for this
> document is "Second Amended Complaint."

On December 18, 2006, Thomas filed Defendant's
Motion to Dismiss, (Dkt. No. 160), which was later
joined by both Smith and Lapinard, (Dkt. No. 167).
In their Motion to Dismiss, defendants Thomas,

Smith and Lapinard (collectively "Defendants")
argue that each of Plaintiffs' claims against them is
barred by the applicable statute of limitations.
Although originally only directed to counts 17, 21, 22
and 23 of the Supplemental Complaint, the scope of
Defendants' motion was later expanded to encompass
counts 10-14 of the First Amended Complaint, as
these counts were addressed by both Plaintiffs and
Defendants in their briefing before the court. For the
reasons discussed below, Defendants' Motion to
Dismiss is granted in part and denied in part.

*BACKGROUND*

Plaintiffs' claims arise out of events that allegedly
occurred over a period of days from August 29, 2002
to September 2, 2002. During this time period,
Plaintiffs allege that Stacy Marx was wrongfully
detained at Northwestern Memorial Hospital
("NMH") and admitted to the Stone Institute of
Psychiatry ("Stone Institute") against her will, in
violation of her statutory, constitutional, and common
law rights. At the time of these events, Stacy Marx
was pregnant with her son David, who was born
prematurely on September 20, 2002.

Plaintiffs' allegations in this case are both numerous
and specific.[FN2] Because of the procedural posture of
this motion, the court need not set forth the particular
details of Plaintiffs' claims at this time. Plaintiffs
generally allege that, after arriving at NMH around
12:00 noon on August 29, 2002 for a scheduled
doctor's appointment, Stacy Marx was detained in the
NMH emergency room and later admitted to the
Stone Institute against her will and without the
protections afforded her by law. Although Stacy
Marx was allowed to call her husband and her
attorney late on the evening of August 29, 2002,
NMH and the Stone Institute refused to release Stacy
Marx to the care of either her husband or her attorney
until 12:00 noon on September 2, 2002, at which
point she was released on her own recognizance.
During the time that she was at NMH and the Stone
Institute, Stacy Marx alleges that she was subjected
to unwanted medical treatment, denied food and
vitamins for herself and her prenatal baby, and was
forcibly restrained.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

FN2. Together, the First Amended Complaint and the Supplemental Complaint total 116 pages and include 24 separate counts.

In their original Complaint, filed on August 30, 2004, Plaintiffs named as defendants Northwestern Memorial Hospital, Northwestern Memorial Physicians Group, Northwestern Medical Faculty Foundation, Northwestern University-Feinberg School of Medicine, and various doctors, administrators, nurses, social workers, and other NMH staff. Additionally, Plaintiffs brought claims against "John Doe Northwestern Memorial Hosp, Security Company," "John Doe Security Guards," and "Jane Doe Security Guards."

**\*2** On January 27, 2005, Plaintiffs filed a First Amended Complaint, identifying Levy Security Corporation as defendant "John Doe Northwestern Memorial Hosp, Security Company" and naming "Anthony Harris, Security Director" as an additional defendant in this case. Plaintiffs also retained their claims against "John Doe Guard" and "Jane Doe Guard," as well. On July 6, 2005, this court dismissed all defendants in this case with the exception of Levy Security Corporation. (Dkt. No. 84).

On November 15, 2006, Plaintiffs filed a Supplemental Complaint that named twelve current and former Levy employees as defendants, including Thomas, Smith, and Lapinard. The Supplemental Complaint again included "John Doe Guard" and "Jane Doe Guard" as defendants. Recently, on March 27, 2007, this court extended the deadline for the parties to file amendments to the complaint or to add parties or claims until April 30, 2007.

*LEGAL STANDARD*

Dismissal of a claim pursuant to Rule 12(b)(6) is proper only when it appears beyond a doubt that a plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *McCready v. eBay, Inc.,* 453 F.3d 882, 888 (7th Cir.2006). Generally, the complaint is not required to allege all, or any, of the facts entailed by the claim. *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 714-15 (7th Cir.2006). "It is enough to name the plaintiff and the defendant, state the nature of the

grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Id.* at 714. On the other hand, a plaintiff can plead herself out of court if she includes facts that undermine the allegations set forth in the complaint. *Kolupa,* 438 F.3d at 715. "Dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006) (citing *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir.2005)). In deciding whether to grant a 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir.2006).

*ANALYSIS*

Plaintiffs' allegations against Defendants fall into three main categories: (1) violations of the Illinois Mental Health and Developmental Disabilities Code, 405 Ill. Comp. Stat. 5/1-100, *et seq.* ("Mental Health Code"), Counts 10-14 and Count 21; (2) civil rights violations brought pursuant to 42 U.S.C. § 1983, Counts 8 and 17; [FN3] and (3) common law torts, Counts 22 and 23. Within each category of claims, Defendants argue that the applicable statute of limitations has run.

FN3. In their First Amended Complaint, Plaintiffs brought Count 8 against "all defendants," alleging "violation of constitutional rights of Mrs. and Mr. Marx under 1 st, 6th, and 14th amendments, federal and state law," pursuant to 42 U.S.C. § 1983. Plaintiffs further noted in their Supplemental Complaint that "the remaining Counts 8 and 10-14 of the First Amended Complaint are hereby pleaded by reference as to each of the John and Joe [sic] defendants now being named in this Supplemental Complaint." Although neither Plaintiffs nor Defendants specifically discuss Count 8 in regards to Defendants' motion, the court's analysis of the statute of limitations for Count 17 applies with equal force to Count 8. The court therefore addresses both counts in this order.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3
Slip Copy, 2007 WL 1280643 (N.D.Ill.)
**2007 WL 1280643 (N.D.Ill.)**

*1. The Mental Health Code*

The court begins its analysis with the various counts brought by Plaintiffs pursuant to the Mental Health Code. In relevant part, the Mental Health Code outlines the procedures to be followed when a patient is involuntarily admitted to a mental health facility, and governs patients' rights within that context. In Counts 10-14 and 21, Plaintiffs allege that Defendants violated the Mental Health Code by failing to advise Stacy Marx of her rights pursuant to the statue, violating these same rights, and failing to follow the applicable procedures set forth by the statute.

**\*3** Defendants argue that the Mental Health Code does not establish a private right of action and that, "[a]t most, the Illinois Mental Health Code establishes a standard of care that may assist a plaintiff in making a prima facie case for negligence based on a violation of that statute."(Dkt. No. 161 at 3). Following this logic, Defendants argue that each of Plaintiffs' Mental Health Code claims is restricted to the statute of limitations for personal injury claims based on negligence, which is two years in Illinois. *See* 735 Ill. Comp. Stat. 5/13-202.

In support of their argument that the personal injury statute of limitations is applicable to Plaintiffs' Mental Health Code claims, Defendants cite to *Threlkeld v. White Castle Systems, Inc.,* 127 F.Supp.2d 986, 989 (N.D.Ill.2001). However, the court finds that *Threlkeld* does not support Defendants' proposition that the Mental Health Code "at most" describes the applicable standard of care for a cause of action sounding in negligence. On the contrary, Judge Bucklo explicitly found it "irrelevant" whether there was a private right of action under the Mental Health Code, because the plaintiff in that case had *only* proceeded on a theory of negligence. *Threlkeld,* 127 F.Supp.2d at 989. The question of whether there is a private right of action under the Mental Health Code was not before the court in *Threlkeld.*

Similarly, although the court in *Cuyler v. United States* found that the plaintiff's claim for negligence could be based upon alleged violations of the Illinois Child Abuse Reporting Act, the court did not address the question of whether that was the only remedy available to the plaintiff in that case. *See Cuyler v.*

*United States,* 37 F.Supp.2d 1099, 1102-03 (N.D.Ill.1999) ("For starters, this Court need not address whether the Illinois Child Abuse Reporting Act affords an implied private cause of action ."). Defendants' citation to *Cuyler* is irrelevant to the question of whether there is an implied right of action under the Mental Health Code.

As a federal court exercising supplemental jurisdiction over state law claims, this court must apply state law to all substantive issues. *Timmerman v. Modern Indus., Inc.,* 960 F.2d 692, 696 (7th Cir.1992). It is well settled that statutes of limitations are considered substantive in nature. *Allstate Ins. Co. v. Menards, Inc.,* 285 F.3d 630, 633 (7th Cir.2002) (citing *Guaranty Trust v. York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). Therefore, it is this court's duty to determine the statute of limitations that the Illinois Supreme Court would apply to Plaintiffs' claims. *Allstate Ins. Co.,* 285 F.3d at 637.

The parties do not cite to any direct guidance from the Supreme Court of Illinois on the question of whether there is a private right of action under the Mental Health Code and, if so, what the applicable statute of limitations for such a cause of action might be. Likewise, in conducting its own research, the court was unable to unearth any cases from the Supreme Court of Illinois directed to this question. When a federal court lacks direct guidance from the state court, the Seventh Circuit has determined that, "federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court."*Id.*

**\*4** In 1979, the Appellate Court of Illinois, First District, found a private right of action under what was then Section 5-3 of the Illinois Mental Health Code of 1967.[FN4]*Montague v. George J. London Memorial Hospital,* 78 Ill.App.3d 298, 33 Ill.Dec. 565, 396 N.E.2d 1289, 1293 (Ill.App.Ct.1979). Relying on both public policy and legislative intent, the court found that violations of Section 5-3 led to specific harms (including unnecessary treatment, ingestion of drugs, pain, suffering, mental anguish, and mounting medical bills) that were not adequately addressed by common law torts such as false imprisonment, assault, battery, or hospital

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

malpractice. *Id. at 1293-94.*The court specifically rejected the defendant's argument that "private hospitals or their employees and agents" were not proper defendants under the Mental Health Code. *Id.* Of special significance to this case, the court also held that the five-year statute of limitations for "civil action[s] not otherwise provided for" applied to claims alleging violations of the Mental Health Code. *Id.* at 1293;*see*735 Ill. Comp. Stat. 5/13-205.

> FN4. Section 5-3 provided that:
>
> > Each voluntary admittee shall be allowed to leave the hospital within 5 days, excluding Saturdays, Sundays and holidays after he gives any professional staff person written notice of his desire to leave, unless prior to leaving the patient withdraws such notice by written withdrawal, or unless within said five days a petition and the certificates of two examining physicians, at least one of whom shall be a psychiatrist, are filed with the court, and the court shall order a hearing pursuant to Section 8-8. The patient may continue to be hospitalized pending a final order of the court in the court proceedings.
>
> > In 1979, the Mental Health Code of 1967 was repealed and replaced by the Mental Health and Development Disabilities Code. *Montague, 33 Ill.Dec. 565, 396 N.E.2d at 1290 n. 1.* At that time Section 5-3 was renumbered to Section 3-403. *Id.*

Although the *Montague* court did not specifically set forth the four-part test for finding an implied right of action under Illinois law, *see Rodgers v. St. Mary's Hosp. of Decatur, 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 619 (Ill.1992),* a reading of the court's decision shows that it essentially employed this same analysis. In other words, the *Montague* court determined that an implied right of action was necessary to further the underlying purpose of the Mental Health Code by redressing the plaintiff's unique harms. This court has no reason to believe that the Supreme Court of Illinois would deviate from the reasoning or holding in *Montague.*Relying on *Montague* for guidance, this court finds that the Supreme Court of Illinois is likely to recognize an

implied cause of action for claims brought pursuant to the Mental Health Code, and that the applicable statute of limitations for such claims is five years. In this case, because the alleged violations of the Mental Health Code took place less than five years ago, the court finds that the statute of limitations on Counts 10-14 and 21 has not yet run.

As a procedural matter, the court declines to address Defendants' argument that, as "providers of security services," the Mental Health Code does not apply to them. Defendants raised this argument for the first time in their reply brief, giving the Plaintiffs no opportunity to respond to an argument substantially different from the original question of whether the applicable statute of limitations barred their claims. Arguments raised for the first time on reply will generally not be addressed by the court. *United States v. LaShay, 417 F.3d 715, 719 (7th Cir.2005)* ("Typically, arguments first raised in a reply brief are considered waived."). Likewise, Defendants' argument that they are not "peace officers" as defined by the statute was also untimely raised.

**\*5** The court rejects Defendants' underdeveloped argument that the Illinois Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act", 745 Ill. Comp. Stat. 10/1-101*et seq.*) limits the period for filing claims against Defendants to one year. The Tort Immunity Act states that:

No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term 'civil action' includes any action, whether based on the common law or statutes or Constitution of this State.

745 Ill. Comp. Stat. 10/8-101. Defendants point out that Plaintiffs have alleged that Levy and Levy security guards were licensed in Illinois and authorized to perform Chicago Police Department functions pursuant to the Chicago Municipal Code and the Illinois Code of Civil Procedure. (First Am. Compl. ¶ 32). Without agreeing to this assertion, Defendants argue that *if* Defendants' actions were found to be actions performed by a local public entity, the Mental Health Code claims against them would be barred by the Tort Immunity Act's statute of

limitations.

While it is true that "the comprehensive protection afforded by section 8-101 necessarily controls over other statutes of limitation," *Paszkowski v. Metro. Water Reclamation Dist. of Greater Chicago,* 213 Ill.2d 1, 289 Ill.Dec. 625, 820 N.E.2d 401, 408 (Ill.2004), Defendants do not set forth any argument that Levy or its security guards should be considered either local public entities or employees of a local public entity. The only citations provided by Defendants are to cases clearly brought against a "local entity or any of its employees." *See Tosado v. Miller,* 188 Ill.2d 186, 242 Ill.Dec. 120, 720 N.E.2d 1075, 1076-78 (Ill.1999) (allegations brought against defendant Cook County Hospital and its employees); *Paszkowski,* 289 Ill.Dec. 625, 820 N.E.2d at 404 (noting that "sanitary districts such as defendant" are included within the Tort Immunity Act's statutory definition of "local public entity," found at 745 Ill. Comp. Stat. 10/1-206).

It is not clear to the court that Plaintiffs' assertions in paragraph 32 of their First Amended Complaint lead to the necessary conclusion that Defendants are either a "local entity" or "any of its employees" for purposes of the Tort Immunity Act. The court therefore declines to find that Plaintiffs' Mental Health Code claims are barred by the Tort Immunity Act's statute of limitations.

Because Plaintiffs' claims pursuant to the Mental Health Code were timely alleged against defendants Thomas, Smith, and Lapinard within the applicable five-year statute of limitations, the court denies Defendants' Motion to Dismiss Counts 10-14 and 21 of the First Amended Complaint and Supplemental Complaint.

*2. Civil Conspiracy*

Defendants also assert that Plaintiffs' civil conspiracy claim is governed by the two-year statute of limitations applicable to personal injury claims. However, the case cited by Defendants in support of this assertion does not address claims for civil conspiracy; rather, the case discusses conspiracy claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968. *See HGN Corp. v. Chamberlain, Hrdlicka, White, Johnson & Williams,* 642 F.Supp. 1443, 1451-

52 (N.D.Ill.1986). Under Illinois law, civil conspiracy is a distinct tort that "requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.' " *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 241 Ill.Dec. 787, 720 N.E.2d 242, 258 (Ill.1999) (quoting *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (Ill.1994)). As a common law tort, Plaintiffs' civil conspiracy claim is governed by the five-year statute of limitations that applies to "all civil actions not otherwise provided for." 735 Ill. Comp. Stat. 5/13-205; *see Gas Tech. Inst. v. Rehmat,* No. 05 C 2712, 2006 WL 3743576, at *34 (N.D.Ill.Dec.15, 2006) (finding five-year statute of limitations applied to state law claims, including civil conspiracy to commit fraud); *Kolody v. Simon Marketing, Inc.,* No. 97 CV 0190, 1998 WL 578527, at *19 (N.D.Ill. Sept.3, 1998) (Section 13-205 applies where plaintiff did not rely on statutory cause of action). Because Defendants have provided no applicable support for their assertion that Plaintiffs' civil conspiracy claim is subject to a two-year statute of limitations, the court denies Defendants' Motion to Dismiss as to Count 23.

*3. Section 1983 Claims and Battery*

**\*6** It is well established that the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is borrowed from the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago,* 146 F.3d 459, 462 (7th Cir.1998). In Illinois, the statute of limitations on Plaintiffs' § 1983 claims is thus two years. 735 Ill. Comp. Stat. 5/13-202. The same statute of limitations also applies to Plaintiffs' battery claim. *See Crockett v. City of Northlake, IL,* No. 00 C 4542, 2002 WL 31236085, at * 12 (N.D.Ill. Oct.1, 2002).

In this case, Plaintiffs filed their original Complaint on August 30, 2004, just marking the two-year anniversary of the alleged events. However, Plaintiffs did not name the individual Defendants until more than two years after the filing of their original Complaint, on November 15, 2006.[FN5]

> FN5. Even if the court were to consider the Supplemental Complaint to be part of the First Amended Complaint, which was filed January 27, 2005, the filing would still be

almost five months past the cut-off date.

Because Plaintiffs' § 1983 and battery claims against Defendants were filed after the limitations period expired, they must be dismissed with prejudice, unless Plaintiffs can demonstrate that their claims against Defendants relate back to the original complaint, or that equitable remedies apply. *See* Redmond v. Russo No. 98 C 288, 1999 WL 446850, at *3 (N.D.Ill. June 25, 1999). In their response, Plaintiffs have argued that their claims against Defendants do relate back to the original Complaint, and that the doctrines of equitable estoppel and equitable tolling should apply to their claims. The court addresses each of these arguments in turn.

First, Plaintiffs argue that the claims in their First Amended Complaint and Supplemental Complaint relate back to the claims of the original Complaint. However, federal case law is clear that relation back only applies in cases of *mistaken* identity, and not to claims wherein the plaintiff simply does not know the identity of the proper defendant. Baskin v. City of Des Plaines, 138 F.3d 701, 704 (7th Cir.1998). In this case, Plaintiffs knew from the beginning of their ordeal that they had claims against "John Doe Northwestern Memorial Hosp, Security Company," "John Doe Security Guards," and "Jane Doe Security Guards." (*See* First Am. Compl. ¶¶ 111, 131-32, 152-55) (detailing the involvement of Plaintiffs' attorney on both August 29, 2002 and August 30, 2002). Knowing that they had been wronged, it was the Plaintiffs' obligation to file their lawsuit with enough time to discover the specific identity of the unknown defendants within the applicable limitations period. Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 596 (7th Cir.2006) ("It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires."). Instead, Plaintiffs chose to file their lawsuit on (essentially) the last day of the limitations period, thus leaving themselves virtually no opportunity to conduct the discovery needed to determine the actual identity of the individual security guards. Because there has been no mistake of identity in this case, the doctrine of relation back will not operate to fix Plaintiffs' deficiency in this regard.

*7 Plaintiffs next argue that the doctrine of equitable estoppel should apply to their claims, alleging that Defendants knowingly withheld from Plaintiffs

information regarding their true identities. Under Illinois law, [FN6] equitable estoppel will suspend the statute of limitations "during any period in which the defendant took certain active steps to prevent the plaintiff from suing." Hollander v. Brown, 457 F.3d 688, 694 (7th Cir.2006). On the other hand, "[w]ithout the misrepresentation or concealment of a material fact, equitable estoppel does not apply." Parks v. Kownacki, 193 Ill.2d 164, 249 Ill.Dec. 897, 737 N.E.2d 287, 296 (Ill.2000). In this case, Plaintiffs have alleged that documents necessary to ascertain the identity of the guards on duty "were knowingly not generated to cover up the identities of those involved, or were knowingly destroyed after the filing of this claim."(Dkt. No. 173 at 8) (citing Supp. Compl. ¶¶ 53-63, 140-142). However, Plaintiffs do not argue that Defendants' actions either lulled them into a false sense of security or prevented them from realizing that they had a claim. *See* Hollander, 457 F.3d at 694. On the contrary, as discussed above, Plaintiffs allege that they knew right away that they had claims against the security guards employed at NMH. Plaintiffs nonetheless waited two years before filing their claims, leaving themselves with only three days in which to ascertain the identity of the unknown defendants before the statute of limitations ran out.[FN7] While Plaintiffs are allowed to support their argument with any additional allegations consistent with the First Amended Complaint and the Supplemental Complaint, *see Early,* 959 F.2d at 79, Plaintiffs have not argued that Defendants' actions *caused* them to dely their filing. *See* Williams v. Sims, 390 F.3d 958, 959 (7th Cir.2004) (stating that equitable estoppel addresses "conduct by the defendant that prevents the plaintiff from suing within the statutory period"). The court will not assume that such was the situation.[FN8]

FN6. Because both equitable tolling and equitable estoppel function as "integral part[s] of the statute of limitations," this court looks to Illinois law for guidance in this area. Hollander v. Brown, 457 F.3d 688, 694 (7th Cir.2006).

FN7. The earliest return of service for any defendant in this case was not executed until September 9, 2004, at which point the statute of limitations had already run.

**FN8.** In their response, Plaintiffs argue that the "good reason why Plaintiffs could not have filed sooner" was due to "a full load of ongoing litigation, Mrs. Marx alleged mental state and David Marx's premature birth."(Dkt. No. 173 at 10).

Finally, Plaintiffs argue that the doctrine of equitable tolling should apply to their claims against Defendants. The Illinois Supreme Court has said that "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum."*Clay v. Kuhl,* 189 Ill.2d 603, 244 Ill.Dec. 918, 727 N.E.2d 217, 223 (2000). On the other hand, courts have also concluded that "whether Illinois recognizes equitable tolling is still unresolved because the Illinois cases mentioning the term seem to mean equitable estoppel."*Grifin v. Willoughby,* No. 4-06-0415, 2006 WL 3775299, at *7 (Ill.App.Ct. Dec. 15, 2006) (citing *Fidelity Nat'l Title Ins. Co. of New York v. Howard Sav. Bank,* 436 F.3d 836, 839 (7th Cir.2006)). The Seventh Circuit has demonstrated a willingness to apply equitable tolling in situations wherein the plaintiff, through no fault of his or her own, cannot reasonably be expected to sue in time, despite the exercise of proper diligence. *See, e.g., Bontkowski v. Smith,* 305 F.3d 757, 762 (7th Cir.2002); *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 561-62 (7th Cir.1996); *Early v. Bankers Life and Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992).

**\*8** On the face of their First Amended Complaint and Supplemental Complaint, it does not appear to the court that Plaintiffs were subject to extraordinary circumstances that would have prevented them from filing in a more timely manner. However, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment."*Early,* 959 F.2d at 79 (citing *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985)). The only question at this stage in the litigation is "whether there is any set of facts that if proven would establish a defense to the statute of limitations."*Clark v. City of Braidwood,* 318 F.3d 764, 768 (7th Cir.2003) (citing

*Early,* 959 F.2d at 79).

In their response, Plaintiffs argue that their failure to file earlier was due to "a full load of ongoing litigation, Mrs. Marx alleged mental state and David Marx's premature birth."(Dkt. No. 173 at 10). While these factors would undoubtedly have impacted Plaintiffs' decision whether to file their lawsuit at a particular time, they do not support Plaintiffs' request for equitable tolling in this case.

Plaintiffs' argument that Stacy Marx's mental state should toll the applicable statute of limitations is inconsistent with the pleadings of the First Amended Complaint. The pertinent question in cases of mental illness is whether the illness "*in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them."*Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996) (emphasis in original). Plaintiffs allege in the First Amended Complaint that Stacy Marx fully understood that her legal rights were being violated, and that she contacted her attorney at the first available opportunity. (*See* First Am. Compl. ¶¶ 111, 131-135, 152-155). Because she understood and acted upon her legal rights, Stacy Marx's mental illness cannot be cause for equitable tolling in this case.

Furthermore, applicable case law is clear that equitable tolling only applies to situations in which plaintiffs either do not realize that their rights were violated, or where they encountered specific obstacles to filing their case in a timely manner. *See, e.g., Turner v. City of Chicago,* No. 06 C 4786, 2007 WL 707546, at *2 (N.D.Ill. Mar.5, 2007) ("Plaintiff alleges that the promotions occurred in September 2004, but she does not say when she realized that they were unlawful. Given those allegations, it is possible that, despite her best efforts, plaintiff did not discover that the promotions were unlawful until much later."); *Nat'l Black Expo v. Clear Channel Broad., Inc.,* No. 03 C 2751, 2007 WL 495307, at *4 (N.D.Ill. Feb.8 2007) (equitable tolling applies where plaintiff "cannot obtain information necessary to decide whether the injury is due to wrongdoing and caused by or due to the defendant"); *Clark,* 318 F.3d at 768 (finding sufficient allegations to support equitable tolling where plaintiff "made reasonably clear that he was trying to allege that he did not learn of his injury until some point outside of the

Slip Copy, 2007 WL 1280643 (N.D.Ill.)
**2007 WL 1280643 (N.D.Ill.)**

limitations period"); _Bontkowski,_ 305 F.3d at 762-63 ("If a reasonable person in [plaintiff's] position could not have learned that he had a claim against [defendant] earlier than he learned ... he would have a defense to the statute of limitations."); _Early,_ 959 F.2d at 80 (finding sufficient allegations of tolling where plaintiff was clearly "trying to allege that the EEOC had misled him on that first visit").

*9 Plaintiffs do not allege that they were unable to ascertain that they were the victims of wrongdoing or that they were unable to obtain the information necessary to bring a complaint. On the contrary, if taken to be true, the allegations in the First Amended Complaint and Supplemental Complaint make clear that Plaintiffs fully comprehended _at the time of the alleged violations_ that their rights were being violated by individual security guards employed by Northwestern Memorial Hospital. While it may have been inconvenient, or even quite difficult, for Plaintiffs to file earlier because of financial problems, emotional problems, or medical problems, Plaintiffs themselves admit that these problems did not impact their ability to understand that they had been wronged by individual security guards.

Although Plaintiffs have been "free to allege ... any facts [they] please [ ] that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle [them] to judgment," _Early,_ 959 F.2d at 79, Plaintiffs have failed to point to any particular obstacle that prevented them from filing their claims against Defendants in a more timely manner. Plaintiffs do not argue that they made any attempt to file their Complaint prior to August 30, 2004, or that they encountered specific difficulties that prevented them from filing earlier. The court therefore finds that Plaintiffs have not alleged circumstances that would support their request for equitable tolling.

Because Plaintiffs failed to name Defendants until after the two-year statute of limitations had run on their § 1983 claims and their battery claim, and because relation back, equitable estoppel, and equitable tolling do not apply to these claims, the court grants Defendants' Motion to Dismiss as to Count 8 of the First Amended Complaint, and Counts 17 and 22 of the Supplemental Complaint.

_4. Claims Brought by Plaintiff David Marx_

Finally, Plaintiffs argue that Illinois law governs the statute of limitations applicable to David Marx's claims. Specifically, Plaintiffs direct the court to the following language:

[I]f the person entitled to bring an action, specified in sections 13-201 through 13-210 of this Act, at the time the cause of action accrued, is under the age of 18 or is under a legal disability, then he or she may bring the action within 2 years after the person attains the age of 18 or the disability is removed.

735 Ill. Comp. Stat. 5/13-211. In this case, the only counts that have been dismissed due to the running of the statute of limitations are Counts 8, 17, and 22. Because none of these claims were brought by plaintiff David Marx, Plaintiffs' argument on this point is moot.

_CONCLUSION_

For the reasons discussed above, Defendants' Motion to Dismiss is granted in part and denied in part. Count 8 of the First Amended Complaint and Counts 17 and 22 of the Supplemental Complaint are dismissed with prejudice as to Defendants Thomas, Smith and Lapinard. All dates in this case remain as set by the court on January 11, 2007 and March 27, 2007. (Dkt.Nos.172, 189).

N.D.Ill.,2007.
Marx v. Northwestern Memorial Hosp.
Slip Copy, 2007 WL 1280643 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.


Cotton v. Private Bank & Trust Co.
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
Sherman COTTON, as Independent Executor of the Estate of Loy E. King, Jr. and Trustee of the Loy E. King, Jr. Living Trust, Plaintiff,
v.
PRIVATE BANK & TRUST CO., an Illinois corporation, BDO Seidman, LLP, a New York limited liability partnership, Defendants,
v.
LEWIS, RICE, FINGERSH, L.C., CREWS & ASSOCS., an Arkansas Corporation, CIBC World Markets Corp., a Delaware corporation, SBU, Inc., a Missouri corporation, Flag Finance Corp., a Missouri corporation, James R. Gibson, Marjorie Gibson and Jacquelyne Gibson, Third Party Defendants/Third Party Plaintiffs,
v.
BDO SEIDMAN, LLP, a New York limited liability partnership, Third Party Defendant.
**No. 01 C 1099.**

March 12, 2004.

David M. Allen, Jeffrey Edward Schiller, Rachel T. Nguyen, Schuyler, Roche & Zwirner, Terrence Eugene Leonard, Terrence E. Leonard, Chartered, Chicago, IL, for Plaintiff/Counter-Defendant.
David L. Doyle, James Vincent Garvey, Vedder, Price, Kaufman & Kammholz, P.C., Michael S. Poulos, Catherine J. Casey, Amy Julia Collins, Piper Rudnick LLP, Chicago, IL, Philip L Cohan, Piper Rudnick, Washington, DC, for Defendants/Counter-Claimant/Third-Party Plaintiff.
Jeffrey D. Colman, David Eric Jimenez-Ekman, Gregory M. Boyle, Thomas Patrick Monroe, Jenner & Block, LLC, Chicago, IL, Richard E. Boyle, Gundlach, Lee, Eggman, Boyle & Roessler, Belleville, IL, Donald B. Hilliker, Derek J. Meyer, Benson K. Friedman, McDermott, Will & Emery, Brock F. Renner, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL, Gena A Gregory, Stephen W Jones, Jack, Lyon & Jones, P.A., Little Rock, AR, Kendra Johnson Panek, Schiff Hardin LLP, Dawn Michele Phillips, Kelley, Drye & Warren, Chicago, IL, Catherine A. Schroeder, W. David Wells, Tracy Jonathan Cowan, Michael J Morris, Thompson Coburn, Paul Puricelli, Jonathan T Baum, Stone, Leyton & Gershman, St. Louis, MO, for Third-Party Defendants/Third-Party Plaintiffs.

*MEMORANDUM OPINION AND ORDER*

GUZMAN, J.

***1** This diversity action involves the alleged misappropriation and conversion of U.S. Treasury Stripped Bonds ("the Bonds") from trust accounts created for the purpose of making periodic payments to Loy. E. King, Jr. ("King") and his estate pursuant to a settlement agreement. Plaintiff Sherman Cotton ("Cotton") has sued Lewis, Rice, Fingersh, L.C. ("Lewis Rice") for tortious interference with contract (Count IV), tortious interference with economic expectancy (Count V), inducement of breach of fiduciary duty (Count VI), conversion of assets (Count VII), and conspiracy to breach fiduciary duty (Count XVII). Defendant has moved to dismiss all five Counts of Plaintiff's second amended complaint currently pending against Lewis Rice pursuant to Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons set forth below, the Court denies Lewis Rice's motion.

*FACTS*

This case arises out of a settlement agreement pertaining to a personal injury suit brought by King. As a part of the settlement agreement, the defendant in the personal injury suit assigned its rights and responsibilities to SBU, Inc. ("SBU"), a Missouri corporation, who agreed to make the requisite periodic payments to King and King's estate by way of a trust account consisting of U.S. Treasury Stripped Bonds ("Bonds"). SBU subsequently transferred the Bonds to Private Bank and Trust Company ("PrivateBank"), who created a structured settlement trust to distribute periodic payments to King.

This trust designed SBU as the settlor and sole beneficiary, PrivateBank as the trustee, and Cotton as the trust creditor. PrivateBank, as trustee, then resigned as trustee and appointed Flag Finance

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 526739 (N.D.Ill.)
**2004 WL 526739 (N.D.Ill.)**

Corporation ("Flag") as successor trustee. Subsequently, Flag and SBU, of both James R. Gibson ("Gibson") was officer and majority shareholder, directed PrivateBank to transfer securities including the Bonds to an account held by Crews & Associates, a broker-dealer, who then-at the request of either Flag or SBU or one or more of the Gibsons-transferred some of the Bonds to a non-trustee account at CIBC World Markets Corp. ("CIBC").

Plaintiff alleges that prior to the Fall of 1999, Gibson converted the Bonds from the structured settlement trust held by Crews and CIBC for his own use and benefit and left the country. King stopped receiving payments pursuant to the Trust Agreements in July 2000. On April 4, 2000, Cotton allegedly received notification that PrivateBank had previously in August 1996 resigned as trustee and paying agent.

This suit commenced on February 16, 2001, when Plaintiff filed suit in the U.S. District Court for the Northern District of Illinois against PrivateBank for damages, costs and equitable relief related to the alleged misappropriation and conversion of the Bonds from the structured trust account detailed above. Private Bank then filed complaints against BDO Seidman, L.L.P. ("BDO"), Crews, CIBC, SBU, Flag, and Gibson. Cotton then amended his complaint to include BDO as a Defendant, a claim that has now been settled. *See Cotton v. PrivateBank & Trust Co.,* No. 01 C 1099, 2003 WL 22220259, at *7 (N.D.Ill. Sept.24, 2003).

**\*2** On July 7, 2003, Plaintiff was granted leave to amend the complaint to also add Lewis Rice ("Defendant") as a Defendant, alleging five counts: tortious interference with contract (Count IV), tortious interference with economic expectancy (Count V), inducement of breach of fiduciary duty (Count VI), conversion of assets (Count VII), and conspiracy to breach fiduciary duty (Count XVII). Plaintiff alleges that Lewis Rice, as attorney for Gibson, SBU, and King, was aware at the time of its relationship with those parties that there existed a valid and enforceable contract which obligated them to make periodic payments to King under the Trust Agreement; that nevertheless Lewis Rice advised and assisted Gibson and SBU to misappropriate and convert the trust assets to purchase twenty-three grocery stores, knowing that the transaction would

deprive the Trust of its source of monies; and that Lewis Rice acted with actual malice and was motivated throughout this transaction by a 30% fee contingent upon the closing of the deal to purchase said stores. (Com pl.¶¶ 103-07.)

Defendant has filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff's claims are time-barred under 735 ILL. COMP. STAT.. 5/13-214.3, as well as that Plaintiff's third-party, non-client causes of action are barred by Lewis Rice's qualified privilege against liability under Illinois law.

*DISCUSSION*

A. Statute of Limitations

This Court sitting in diversity will apply the procedural and substantive law of the forum state, including its statute of limitations. *See Reinke v. Boden,* 45 F.3d 166, 172 (7th Cir.1995) (holding that "it is clear that, as a general rule, Illinois considers statute of limitations matters to be procedural" and thus binding on federal courts in diversity suits).

The general civil Illinois statute of limitations provides:

Except as provided in Section 2-725 of the "Uniform Commercial Code" ... and Section 11-13 of "The Illinois Public Aid Code" ... actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and *all civil actions not otherwise provided for,* shall be commenced within 5 years next after the cause of action accrued.

735 ILL. COMP. STAT.. 5/13-205 (emphasis added).

Defendant Lewis Rice, however, argues that Plaintiff's claims of tortious interference, interference with economic expectancy, inducement to breach fiduciary duty, conversion of assets and conspiracy to breach fiduciary duty are time-barred under Illinois' statute of limitations for attorney malpractice actions. That statute reads:

An action for damages based on tort, contract, or

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 526739 (N.D.Ill.)
**2004 WL 526739 (N.D.Ill.)**

otherwise (i) against an attorney arising out of an act or omission in the performance of professional services ... must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

**\*3** *Id.* 5/13-214.3(b). Plaintiff responds that 735 ILL. COMP. STAT.. 5/13-214.3(b) applies only within the context of traditional attorney malpractice and does not bar claims that allege attorney wrongdoing outside of the attorney-client fiduciary relationship.

The Illinois Supreme Court has only once addressed the scope of 735 ILL. COMP. STAT.. 5/13-214.3. *See Petersen v. Wallach,* 198 Ill.2d 439, 261 Ill.Dec. 728, 764 N.E.2d 19, 22-24 (Ill.2002). In the course of holding that the language of Section 13-214.3 is not limited to actions involving distribution of assets through probate proceedings, that court explained, "[t]he fundamental principle of statutory construction is to determine and give effect to the intent of the legislature." *Id. at 22.* The Court is not "at liberty to depart from the plain language and meaning of the statute ...," even if "absurd or unjust result[s]" stem from that interpretation. *Id.* The court noted that had the LEGISLATURE intended to limit the statute's language according to the manner of asset distribution, it "could have expressly limited the Act to probate distributions or by expressly excluding nonprobate distributions." *Id.* at 23.

Here, however, the language of 735 ILL. COMP. STAT.. 5/13-214.3(b) is unambiguous with respect to its exclusive application to attorney malpractice claims. Defendant argues that 735 ILL. COMP. STAT.. 5/13-214.3(b) clearly applies outside of the context of attorney malpractice claims, given that it contains neither a reference to malpractice claims nor to clients. But unlike the portion of Section 13-214.3 that the Illinois Supreme Court in *Peterson* deemed ambiguous and broad, Section 5/13-214.3(b) provides explicitly for a limited reach. The statute provides for a two-year statute of limitations not merely for "an act or omission of the attorney"-the basis of Plaintiff's allegations here-but rather for "an act or omission *in the performance of professional services."* An attorney who provides professional services assumes a fiduciary duty to the person contracting for her services. *Cf. Westinghouse Elec.*

*Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1317 (7th Cir.1978) (citing *Udall v. Littell,* 366 F.2d 668, 675-76 (1966)). In this context, Lewis Rice assumed no such fiduciary duty as to Cotton, and thus was not engaged in providing "professional services" as to Cotton at the time of the injury.[FN1]

> FN1. This interpretation is also supported by the legislative history of Section 13-214.3, although there is no need to look that far. *See Mich. Ave. Nat'l Bank v. County of Cook,* 191 Ill.2d 493, 247 Ill.Dec. 473, 732 N.E.2d 528, 535 (Ill.2000) ("[W]here the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction.").

Defendant cites two cases for the proposition that Illinois case law supports the application of Section 5/13-214.3(b) to non-legal malpractice claims, both of which are insufficient to persuade the Court to alter the plain meaning of the statute's language. *See Salon Group, Inc. v. Salberg,* No. 00 C 1754, 2002 U.S. Dist. LEXIS 5494, at \*6-10 (N.D.Ill. Mar. 29, 2002); *Sinclair v. Bloom,* No. 94 C 4465, 1995 WL 348127, at \*4 (N.D.Ill. June 8, 1995). Defendant argues that the causes of actions in both *Salon Group* and *Sinclair, i.e.,* breach of a license agreement, common law fraud, breach of fiduciary duty and undue influence, fall outside of the normal gambit of attorney malpractice claims, warranting a broad interpretation of Section 13-214.3(b)'s language.

**\*4** However, the facts of both *Salon Group* and *Sinclair* are strikingly dissimilar from this case in one critical way: both involve a lawyer-client relationship between the Plaintiff and Defendant. The apparent dispute that Defendant references over who *hired* the lawyer in *Salon Group* is conceptually and legally distinct from the issue of whether "professional services" were rendered. *See* 2002 U.S. Dist. LEXIS, at \*4 (noting that attorney did "advise [ ]" both plaintiff and party that allegedly hired attorney in course of professional relationship). That the *Salon Group* court later stated Section 13-214.3 encompassed "any" action in contract, tort, or otherwise, *id.* at \*6, does not change the fact that the statute does not use that language nor does it change the fact that it specifies there must exist a "professional" relationship between a defendant and a plaintiff.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 526739 (N.D.Ill.)
**2004 WL 526739 (N.D.Ill.)**

Additionally, Judge Coar's holding in *Sinclair v. Bloom* supports the necessity of a lawyer-client relationship between a plaintiff and a defendant in the context of Section 13-214.3. 1995 WL 348127, at *4. There the court noted that whether a cause of action is categorized as "undue influence" or as "breach of fiduciary duty" is irrelevant; the statute of limitations question is answered by reference to whether the attorney's misconduct arose from his performance of professional services. *Id.* (holding that 735 ILL. COMP. STAT.. 5/13-214.3 governed because "Bloom 'was acting as an attorney for' plaintiffs" at time of misconduct).

Moreover, Illinois appellate courts have distinguished between a claim arising out of a professional relationship and one arising out of a third-party, non-client relationship. Plaintiff's claims here are similar to *Ganci v. Blauvelt*, where the Illinois Appellate Court held that Section 13-214.3 was inapplicable because the complaint did not allege a failure in professional duty, but rather an action similar to conspiracy or inducement. 294 Ill.App.3d 508, 228 Ill.Dec. 890, 690 N.E.2d 649, 653 (Ill.App.Ct.1998) (holding that 735 ILL. COMP. STAT.. 5/13-214.3 only applies where complaint "set[s] forth a failure of ... professional duty," and not where attorney merely "share[s] culpability for the injuries to plaintiffs").

Thus, this Court holds that plaintiff's claims are not governed by the two-year statute of limitations as Defendant argues. The parties here are bound by the five-year statute of limitations imposed by 735 ILL. COMP. STAT.. 5/13-205.[FN2] *See Poulos v. Lutheran Soc. Servs. of Ill., Inc.,* 312 Ill.App.3d 731, 245 Ill.Dec. 465, 728 N.E.2d 547, 559 (Ill.App.Ct.2000) (holding that actions for tortious interference with contract are governed by Illinois' five-year statute of limitations).

FN2. The Inapplicability of 735 ILL. COMP. STAT.. 5/13-214.3(b)'s two-year statute of limitations also disposes of the question of the applicability of 735 ILL. COMP. STAT.. 5/13-214.3(c)'s six-year statute of repose, the latter which is dependent on the former, 735 ILL. COMP. STAT. . 5/13-214.3(c) (holding that "[a]n action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred").

The Court now must determine whether this cause of action was timely filed. "[W]here a tort involves continuing or repeated injurious behavior, 'the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease.'" *Pavlik v. Kornhaber,* 326 Ill.App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 186-87 (Ill.App.Ct.2001) (quoting *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago,* 214 Ill.App.3d 757, 158 Ill.Dec. 335, 574 N.E.2d 129, 132 (Ill.App.Ct.1991). "Pursuant to the discovery rule, commencement of the pertinent limitations period may be delayed until such time as the plaintiff knew or should have known that he was wrongfully injured." *Horbach v. Kaczmarek,* 288 F.3d 969, 973 (7th Cir.2002).

**\*5** Plaintiffs were granted leave to amend their complaint to name Lewis Rice as a Defendant on July 7, 2003. Plaintiff's complaint and Defendant's motion, memorandum of law, and reply indicate that Plaintiff was made aware of his injury at the earliest in the Fall of 1999 (the date on which Plaintiff discovered that SBU, Gibson, and Flag did not have sufficient funds to cover agreed-upon payments under the structured settlement), and at the latest on April 4, 2000 (the date on which Plaintiff discovered that Flag had replaced PrivateBank as trustee of settlement fund). (Compl.¶¶ 66, 67.). Thus, reading the complaint in the light most favorable to the moving party, Plaintiff filed suit against Lewis Rice less than four years after discovering their injury, well within time limits imposed by 735 ILL. COMP. STAT.. 5/13-205. Accordingly, Defendant's motion to dismiss Counts IV, V, VI, VII, and XVII based on untimeliness is denied.

B. Qualified Privilege

Lastly, Defendant moves to dismiss Counts IV, V, VI, VII, and XVII of Plaintiff's Second Amended complaint pursuant to Rule 12(b)(6) based on the qualified privilege for attorneys under Illinois law. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to " 'test the sufficiency of the complaint, not to decide the merits' " of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). "In considering a motion to dismiss, a court must accept as true all the well-pleaded material facts in the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 526739 (N.D.Ill.)
**2004 WL 526739 (N.D.Ill.)**

complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff." *Shell Oil Co. v. Aetna Cas. & Sur. Co.,* 158 F.R.D. 395, 399 (N.D.Ill.1994); *see also Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n. 2 (7th Cir.2001). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendant argues that under *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* an attorney is granted a qualified privilege against non-client claims. 719 F.2d 1326 (7th Cir.1983)."[P]ublic policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect."*Id.* at 1334 n. 7 (citing *Schott v. Glover,* 109 Ill.App.3d 230, 64 Ill.Dec. 824, 440 N.E.2d 376, 379-80 (Ill.App.Ct.1982)). However, an attorney acting in his or her professional capacity may be held liable to third parties when " 'the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist .' " *Id.* (quoting *Schott,* 64 Ill.Dec. 824, 440 N.E.2d at 380). Illinois courts have interpreted malice to "include a desire to harm, which is independent of and unrelated to the attorney's desire to protect his client." *Schott,* 64 Ill.Dec. 824, 440 N.E.2d at 380. The *George A. Fuller* Court interpreted *Schott* as requiring that Plaintiff prove two separate things: first, that the attorney or corporate officer "induced the breach to further their personal goals or to injure the other party to the contract;" and second, that attorney or corporate officer "acted contrary to the best interest of the corporation." *George A. Fuller,* 719 F.2d at 1333.

**\*6** Defendant argues that to meet this standard, Plaintiff would have had to allege in his Second Amended Complaint facts sufficient to support each of these requirements. Fed.R.Civ.P. 9(b) provides that when a claim against an attorney is filed in federal district court sitting in diversity, "malice ... may be averred generally." Fulfillment of specific state substantive standards is irrelevant under this notice pleading system; a mere allegation will suffice. *Conley,* 355 U.S. at 45-46. Plaintiff meets this requirement by alleging "actual malice" in

paragraph 106(1), which is incorporated by reference into Counts V, VI, VII, and XVI.

Defendant also argues that Plaintiff has pleaded itself "out of court" because the Second Amended Complaint alleges that Lewis Rice acted "for the sole benefit of Lewis Rice's client," rather than "contrary" to the best interests of the client. (Lewis Rice Mem. Supp. Mot. Dismiss at 17) (citing Second Am. Compl. ¶¶ 106(i), 113(r), 199(r), 126(r).) But the issue in dispute is not whether Lewis Rice acted contrary to the "rights of others" nor whether Lewis Rice acted consistently with what the client *requested,* as Defendant argues, but whether pursuing illegal means to further a client's objectives is contrary to the *best interests* of that client. A reasonable interpretation of the phrase, "contrary to the best interests of the corporation," may include acting solely for one's own monetary benefit, as well as adopting illegal means to further the goals of one's client. *See Stafford v. Puro,* 63 F.3d 1436, 1442 (7th Cir.1995) (stating privileged actors are "unjustified in using illegal means to induce a breach of contract").

This case is similar to *Janusz v. Fasco Industries, Inc.,* where the Plaintiff brought a cause of action for tortious interference, and to circumvent Illinois qualified privilege law, alleged that the Defendant corporate officer acted contrary to the company's "best interest." No. 97 C 7976, 1998 WL 246449, at *3 (N.D.Ill. May 1, 1998). The court held that the malice/best interest pleading requirement was satisfied by allegations that the attorney "filed incorrect tax returns for the company to further his own personal goals."*Id.* The court noted that "it could reasonably be inferred from the complaint that violating applicable tax laws is against the best interest of the corporation."*Id.* Similarly here, Plaintiff alleges that Lewis Rice was motivated by a thirty percent commission dependent upon the closing of Gibson's purchase of twenty-three grocery stores, and that Lewis Rice knowingly chose to pursue illegal means to complete that purchase. As in *Janusz,* this Court can reasonably infer from these facts that Defendant acted contrary to the best interests of its clients. Accordingly, Defendant's motion to dismiss Counts IV, V, VI, VII, and XVII based on qualified privilege is denied.

*CONCLUSION*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 526739 (N.D.Ill.)
**2004 WL 526739 (N.D.Ill.)**


For the reasons stated above, the Court denies
Defendant Lewis, Rice, Fingersh, L.C.'s Motion to
Dismiss [doc. no. 169-1].

**\*7** SO ORDERED

N.D.Ill.,2004.
Cotton v. Private Bank & Trust Co.
Not Reported in F.Supp.2d, 2004 WL 526739
(N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                      Page 1
Slip Copy, 2007 WL 420195 (S.D.Ill.)
**2007 WL 420195 (S.D.Ill.)**

C Maxwell v. Village of Sauget, Illinois
S.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. Illinois.
Christopher MAXWELL, Plaintiff,
v.
VILLAGE OF SAUGET, ILLINOIS, et al.,
Defendants.
**No. 06-451-GPM.**

Feb. 5, 2007.

Bruce A. Carr, Rex Carr Law Firm, East St. Louis, IL, for Plaintiff.
Michael D. Hart, Sr., Devereux, Murphy, LLC, St. Louis, MO, Randall W. Kelley, Law Offices of Randall W. Kelley, Swansea, IL, for Defendants.

### *MEMORANDUM AND ORDER*

MURPHY, Chief District Judge.
**\*1** This matter is before the Court on the motion to dismiss brought by Defendants Village of Sauget, Illinois, Richard Sauget, Jr., Patrick Delaney, and Scott Hedgpeth (Doc. 23). For the following reasons, the motion is **GRANTED in part** and **DENIED in part.**

### INTRODUCTION

This case arises from an incident that occurred on June 11, 2004, in which Plaintiff Christopher Maxwell, while being placed under arrest by Scott Hedgpeth, a police officer employed by the Village of Sauget, Illinois ("the Village"), allegedly was assaulted by Hedgpeth. On June 9, 2006, Maxwell filed this action against Hedgpeth, the Village, Richard Sauget, Jr., who is the mayor of the Village, and Patrick Delaney, who is the chief of the Village police department. The operative complaint in this case (Doc. 17) alleges claims for violations of Maxwell's federal civil rights, as well as claims under Illinois state law. Count I of the complaint alleges use of unreasonable force by Hedgpeth, in violation of Maxwell's Fourth Amendment rights, and Count II and Count III allege that Hedgpeth violated Maxwell's First Amendment rights by retaliating

against him for complaining about police misconduct; Count VIII asserts that the Village is liable for these alleged constitutional deprivations because they were the result of a municipal policy or custom. Count IV alleges that the Village, Sauget, Delaney, and Hedgpeth conspired to violate Maxwell's First Amendment rights. Count V and Count VI allege, respectively, assault and battery and intentional infliction of emotional distress against Hedgpeth, while Count IX alleges a claim for negligent hiring, supervision, and retention of police officers against the Village, Sauget, and Delaney. Count VII alleges a civil conspiracy by the Village, Sauget, Delaney, and Hedgpeth. Count X asserts the vicarious liability of the Village for the torts of Hedgpeth, Sauget, and Delaney. The Village, Sauget, Delaney, and Hedgpeth have moved to dismiss Counts II-X of the complaint for failure to state a claim upon which relief can be granted. Having carefully reviewed the submissions of the parties and conducted a hearing on the motion, the Court now is prepared to rule.

### DISCUSSION

### A. Legal Standard

The standard under which the Court must evaluate a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is well established. A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint to state a claim upon which relief may be granted. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326-27 (7th Cir.2000); *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996). In evaluating a Rule 12(b)(6) motion, a court must take a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir.1999); *Strasburger v. Board of Educ., Hardin County Cnty. Unit Sch. Dist. No. 1,* 143 F.3d 351, 359 (7th Cir.1998). A complaint should be dismissed for failure to state a claim only if "no relief could be granted 'under any set of facts that could be proved consistent with the allegations.' " *Nance v. Vieregge,* 147 F.3d 589, 590 (7th Cir.1998) (quoting

*Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

**B. Motion to Dismiss**

**1. Federal Civil Rights Claims**

**a. Fourth Amendment Claims**

**\*2** The Court examines first the claims for violations of Maxwell's constitutional rights alleged in the complaint. The parties do not dispute, and the Court concludes, that Count I of the complaint, alleging that Hedgpeth subjected Maxwell to unreasonable force when arresting him, properly alleges a violation of Maxwell's Fourth Amendment rights. *See Graham v. Conner,* 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other ... seizure ... of a free citizen should be analyzed under the Fourth Amendment[.]") (emphasis omitted).*See also Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511-12 (2002) (federal civil rights claims are subject to an ordinary "notice pleading" standard, not a heightened pleading standard); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168-69 (1993) (same); *Walker v. Thompson,* 288 F.3d 1005, 1010-11 (7th Cir.2002) (Ripple, J., concurring) (same).[FN1]

> FN1. Although it is not entirely clear from both Maxwell's complaint and his brief in opposition to the motion to dismiss whether he asserts an implied right of action under the Constitution, the Court construes all of Maxwell's civil rights claims as being brought pursuant to 42 U.S.C. § 1983, which is the exclusive remedy for the constitutional deprivations alleged in Maxwell's complaint. *See Parratt v. Taylor,* 451 U.S. 527, 532 (1981) (quoting 42 U.S.C. § 1983) (section 1983 furnishes civil liability for any "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" when any person "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory" causes such a deprivation).*See also General Auto Serv. Station v. City of Chicago,* No. 00 C 0368, 2004 WL 442636, at *6 n. 7 (N.D.Ill. Mar. 9, 2004) (section 1983 is the exclusive

remedy for a deprivation of constitutional rights by a person acting under color of state law); *Norflo Holding Corp. v. City of Chicago,* No. 00 C 6208, 2002 WL 453605, at *1 n. 1 (N.D.Ill. Mar. 25, 2002) (same); *Universal Outdoor, Inc. v. Elk Grove Village,* 969 F.Supp. 1124, 1125 (N.D.Ill.1997) (same); *Ellis v. Secretary of State of Ill.,* 883 F.Supp. 291, 293-94 (N.D.Ill.1995) (same); *Allen v. City of Chicago,* 828 F.Supp. 543, 563 (N.D.Ill.1993) (same); *Bieneman v.. City of Chicago,* 662 F.Supp. 1297, 1299-1300 (N.D.Ill.1987) (same).

Although a somewhat closer question, the Court concludes further that Count VIII of the complaint adequately alleges that the injury to Maxwell's Fourth Amendment rights asserted in Count I was the product of the Village's unconstitutional policy or custom. *See Monell v. Department of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 690-91 (1978) (liability under 42 U.S.C. § 1983 is not vicarious, and a municipality may be liable under the statute only for constitutional injuries that are the result of a municipal policy or custom); *Simmons v. Chicago Bd. of Educ.,* 289 F.3d 488, 494 (7th Cir.2002) (same); *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734-35 (7th Cir.1994) (same).*See also Adams v. Cahokia Sch. Dist. # 187,* Civil No. 05-297-GPM, 2007 WL 172227, at *4 n. 1, *7 (S.D.Ill. Jan. 19, 2007).* Maxwell's allegations of municipal liability are somewhat conclusory, but the parties have not strongly disputed their adequacy to state a claim under *Monell* and, thus, the Court is reluctant to scrutinize them strictly under Rule 12(b)(6).*See Ricketts v. Midwest Nat'l Bank,* 874 F.2d 1177, 1185 (7th Cir.1989); *Shockley v. Jones,* 823 F.2d 1068, 1072-73 (7th Cir.1987); *Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411, 414-15 (7th Cir.1986). In any event, Maxwell's municipal liability claim can be examined more closely on summary judgment. *See, e.g., Hauenschild v. City of Harvey, Ill.,* No. 04 C 7814, 2006 WL 3523754, at * *6-8 (N.D.Ill.Dec. 7, 2006); *Hare v. Zitek,* 414 F.Supp.2d 834, 860-62 (N.D.Ill.2005); *Caines v. Village of Forest Park,* No. 02 C 7472, 2003 WL 21518558, at *5 (N.D.Ill. July 2, 2003). Accordingly, Count I and Count VIII withstand Defendants' motion to dismiss.

**b. First Amendment Claims**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Although Maxwell has stated a claim for relief for violations of his Fourth Amendment rights, as well as a claim of municipal liability therefor, the Court concludes that Maxwell's claims based upon violations of his First Amendment rights are due to be dismissed. The gist of Maxwell's allegations is that, when he complained during his arrest by Hedgpeth that his handcuffs were too tight, Hedgpeth tightened the handcuffs and beat him. In general, to establish a claim for retaliation in violation of the First Amendment, a plaintiff must show that (1) he or she engaged in constitutionally-protected conduct and (2) such conduct was a substantial or motivating factor behind the allegedly retaliatory acts. *See Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir.2006); *Sullivan v. Ramirez,* 360 F.3d 692, 697-98 (7th Cir.2004); *Thomas v. Walton,* 461 F.Supp.2d 786, 795 (S.D.Ill.2006). In the context of persons in custody, protected speech must be speech relating to a matter of public concern. *See McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir.2005); *Baldauf v. Davidson,* No. 1:04-CV-1571-JDT-TAB, 2006 WL 3743819, at *18 (S.D.Ind. Dec. 18, 2006); *Clark v. Stevenson,* No. 06-C-419-C, 2006 WL 2380658, at *7 (W.D.Wis. Aug. 15, 2006); *Sulkowska v. City of N.Y.,* 129 F.Supp.2d 274, 286 n. 22 (S.D.N.Y.2001). This is because state actors have in some instances a legitimate interest in abridging the speech of persons in their custody and, absent the public speech requirement, all such abridgments would be elevated to the level of constitutional violations. *See Connick v. Myers,* 461 U.S. 138, 149 (1983) (holding that, to show retaliation in violation of the First Amendment, a public employee must demonstrate that his or her speech relates to a matter of public concern: "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case.").

**\*3** The Court concludes that Maxwell's allegations that Hedgpeth inflicted violence on him for complaining about the tightness of his handcuffs lack the requisite public dimension and can be addressed adequately under the rubric of a Fourth Amendment claim for use of unreasonable force. *See Sulkowska,* 129 F.Supp.2d at 286 n. 22 (holding that a plaintiff's claim that she was arrested for complaining about the seizure of her liquor license by police did not involve

a matter of public concern for First Amendment purposes).*Cf. Baldauf,* 2006 WL 3743819, at * 18 (a plaintiff's claim that she was arrested for criticizing the local police department in a public forum, a convenience store, involved a matter of public concern). Therefore, Count II and Count III of the complaint will be dismissed. Because the Court concludes that Maxwell has failed to state a claim for retaliation, it follows that Sauget and Delaney did not conspire to violate Maxwell's First Amendment rights. *See Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (noting that "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint."). Thus, Count IV of the complaint will be dismissed as well.[FN2]

> [FN2.] The Court notes that, in general, a municipal corporation like the Village cannot conspire with its own agents, Hedgpeth, Delaney, and Sauget. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.,* 921 F.2d 108, 109-11 (7th Cir.1990); *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972); *Emery v. Northeast Ill. Reg'l Commuter R.R. Corp.,* No. 02 C 9303, 2003 WL 22176077, at *4 (N.D.Ill. Sept. 18, 2003). Because the parties have not raised the issue of intracorporate immunity, however, the Court does not dismiss Count IV of the complaint on this ground.

**2. State-Law Claims**

The Court turns to the matter of Maxwell's state-law claims. As discussed, the incident giving rise to this case occurred on June 11, 2004, but Maxwell did not file suit until June 9, 2006. The applicable statute of limitations for claims under 42 U.S.C. § 1983 is two years. *See Kalimara v. Illinois Dep't of Corr.,* 879 F.2d 276, 276-77 (7th Cir.1989); *Foryoh v. Hannah-Porter,* 428 F.Supp.2d 816, 819 (N.D.Ill.2006). However, as both the answer in this case and the motion to dismiss point out, Maxwell's state-law claims are subject to a one-year statute of limitations. The Illinois Local Governmental and Governmental Employees Tort Immunity Act provides, in pertinent part, "No civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the

Slip Copy, 2007 WL 420195 (S.D.Ill.)
**2007 WL 420195 (S.D.Ill.)**

cause of action accrued ."745 ILCS 10/8-101(a).*See also Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir.2006); *Foster v. Unknown Cook County Deputy Sheriff,* 914 F.Supp. 221, 223-24 (N.D.Ill.1995); *Valentino v. Hilquist,* 785 N.E.2d 891, 900-01 (Ill.App.Ct.2003); *Krieger v. Village of Carpentersville,* 289 N.E.2d 481, 482 (Ill.App.Ct.1972).* Affirmative defenses are not usually resolved at the pleading stage, but a plaintiff's claims may be disposed of under Rule 12(b)(6) if the complaint contains facts which demonstrate that those claims are barred by the statute of limitations. *See Walker,* 288 F.3d at 1009-10;*Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 608 (7th Cir.1995); *Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993); *Jimenez v. Herrera,* No. 95 C 1956, 1996 WL 99715, at *5 (N.D.Ill. Mar. 4, 1996); *EEOC v. Park Ridge Pub. Library,* 856 F.Supp. 477, 480 (N.D.Ill.1994).*See also Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 984 (9th Cir.1997).

**\*4** Under Illinois law, a plaintiff's claim accrues for purposes of the statute of limitations when all of the elements of a cause of action are present. *See MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC,* 845 N.E.2d 22, 30 (Ill.App.Ct.2006); *Wolf v. Bueser,* 664 N.E.2d 197, 204 (Ill.App.Ct.1996); *Draper v. Frontier Ins. Co.,* 638 N.E.2d 1176, 1180 (Ill.App.Ct.1994); *Lincoln-Way Cmty. High Sch. Dist. 210 v. Village of Frankfort,* 367 N.E.2d 318, 323 (Ill.App.Ct.1977).* Illinois recognizes, of course, the "discovery rule," whereby the statute of limitations does not begin to run until a plaintiff knows or reasonably should know of a wrongfully-caused injury. *See, e.g., Hermitage Corp. v. Contractors Adjustment Co.,* 651 N.E.2d 1132, 1139 (Ill.1995); *Knox Coll. v. Celotex Corp.,* 430 N.E.2d 976, 979-80 (Ill.1981); *D.P. v. M.J.O.,* 640 N.E.2d 1323, 1326 (Ill.App.Ct.1994); *Walters v. Marion Mem'l Hosp.,* 577 N.E.2d 915, 917-18 (Ill.App.Ct.1991).* However, the discovery rule does not apply in cases where the injury at issue is the result of a "single traumatic event." *Ericksen v. Village of Willow Springs,* 660 N.E.2d 62, 66 (Ill.App.Ct.1995).*See also Walters,* 577 N.E.2d at 917-18 ("If the injury is traumatic in nature, that is, immediate and caused by an external force or violence, the plaintiff knows or should know of his right to sue when injured."). In such cases, the plaintiff is deemed to be on immediate notice of the wrongful nature of the injury and under a duty

promptly to investigate the injury. *See Golla v. General Motors Corp.,* 657 N.E.2d 894, 899 (Ill.1995); *Lowe v. Ford Motor Co.,* 730 N.E.2d 58, 60 (Ill.App.Ct.2000); *Clay v. Kuhl,* 696 N.E.2d 1245, 1249-50 (Ill.App.Ct.1998); *Hutson v. Hartke,* 686 N.E.2d 734, 736-37 (Ill . App.Ct.1997); *Ericksen,* 660 N.E.2d at 66;*Sille v. McCann Constr. Specialties Co.,* 638 N.E.2d 676, 680 (Ill.App.Ct.1994); *Sharpenter v. Lynch,* 599 N.E.2d 464, 467-68 (Ill.App.Ct.1992); *Walters,* 577 N.E.2d at 918;*Nordsell v. Kent,* 510 N.E.2d 606, 608-09 (Ill.App.Ct.1987).

In view of the nature of the injury alleged in this case, an assault by a police officer, the Court has no difficulty concluding that Maxwell's claims for assault and battery, intentional infliction of emotional distress, and negligent hiring, supervision, and retention of Village police officers accrued no later than June 11, 2004, and thus are time-barred under 745 ILCS 10/8-101(a). This conclusion is amply supported by case law. *See Day v. Conwell,* 244 F.Supp.2d 961, 964-65 (N.D.Ill.2003); *Dominguez v. City of Waukegan,* No. 01 C 1701, 2001 WL 686842, at *2 (N.D. Ill. June 15, 2001); *Geddes v. County of Kane,* 121 F.Supp.2d 662, 666 (N.D.Ill.2000); *Turner v. McQuarter,* 79 F.Supp.2d 911, 918 (N.D.Ill.1999); *Finnane v. Pentel of Am., Ltd.,* 43 F.Supp.2d 891, 901-04 (N.D.Ill.1999); *Henry v. Ramos,* No. 97 C 4025, 1997 WL 610781, at *3 (N.D.Ill. Sept. 28, 1997); *Burge v. Harvey Police Officers,* No. 97 C 4569, 1997 WL 610045, at * *1-2 (N.D.Ill. Sept. 25, 1997); *Watkins v. Brandt,* No. 94 C 7452, 1996 WL 450835, at * *2-4 (N.D.Ill. Aug. 6, 1996); *Dirksen v. City of Springfield,* 842 F.Supp. 1117, 1125 (C.D.Ill.1994); *Phelps v. Klipfel,* No. 92 C 4742, 1991 WL 285279, at * *1-3 (N.D.Ill.Dec. 26, 1991); *Yardley v. Rockford,* No. 89 C 20007, 1990 WL 32665, at *2 (N.D.Ill. Feb. 1, 1990).

**\*5** Finally, although Maxwell contends that Count VII of his complaint, alleging civil conspiracy against the Village, Sauget, Delaney, and Hedgpeth, is rescued from the statute of limitations by the "continuing violation" doctrine, the Court does not agree. The continuing violation doctrine provides generally that "[w]here a tort involves continuing or repeated injury ... the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease."*Mount v. LaSalle Bank Lake View,* 886 F.Supp. 650, 652 (N.D.Ill.1995) (quoting

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

*Hyon Waste Mgmt. Servs., Inc. v. City of Chicago,* 574 N.E.2d 129, 132 (Ill.App.Ct.1991)).*See also Dudley Enters., Inc. v. Palmer Corp.,* 822 F.Supp. 496, 505 (N.D.Ill.1993). In the particular context of a claim of civil conspiracy, this means that "[t]he statute of limitations ... runs from the commission of the last overt act alleged to have caused damage."*Austin v. House of Vision, Inc.,* 243 N.E.2d 297, 299 (Ill.App.Ct.1968). Importantly, however, "where there is but one overt act from which subsequent damages may flow, ... the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the conspiracy."*Id. See also MBL (USA) Corp. v. Diekman,* 484 N.E.2d 371, 376 (Ill.App.Ct.1985).*Cf. Scherer v. Balkema,* 840 F.2d 437, 439 (7th Cir.1988) (in the context of a *Bivens* action, explaining that "[i]njury and damage in a civil conspiracy action flow from the overt acts, not from ... the mere continuance of a conspiracy.... Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff.... Accordingly, plaintiffs may recover only for the overt acts ... that they specifically alleged to have occurred within the ... limitations period."). The only overt act described in Maxwell's complaint is the alleged assault on him that occurred on June 11, 2004, and therefore Maxwell's civil conspiracy claim is time-barred under 745 ILCS 10/8-101(a). The Court will dismiss Maxwell's state-law claims, including his claims against the Village based on vicarious liability for the torts of Hedgpeth, Sauget, and Delaney.

## CONCLUSION

The motion to dismiss (Doc. 23) is **GRANTED in part** and **DENIED in part.**Dismissal of Count II, Count III, Count IV, Count V, Count VI, Count VII, Count IX, and Count X of the operative complaint in this case (Doc. 17) is **GRANTED.**Dismissal of Count I and Count VIII is **DENIED.**Count II, Count III, Count IV, Count V, Count VI, Count VII, Count IX, and Count X are **DISMISSED with prejudice,** and Defendants Richard Sauget, Jr., and Patrick Delaney are **DISMISSED** from this case.

**IT IS SO ORDERED.**

S.D.Ill.,2007.
Maxwell v. Village of Sauget, Illinois

Slip Copy, 2007 WL 420195 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.